UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMON SANCHEZ, | : | CIVIL NO: 4:13-CV-01386 |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| LOUIS FOLINO, *et al.*, | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

This case comes before the court for a statutorily mandated screening review. Plaintiff Sanchez, a state prisoner housed in the State Correctional Institution- Greene (SCI- Greene), in Waynesburg, raises claims under 42 U.S.C. § 1983, relating to allegations that prison employees physically and sexually assaulted him. We have reviewed the complaint in accordance with 28 U.S.C. § 1915A, and we conclude that it fails to state a claim upon which relief may be granted against defendant Chief Grievance Coordinator Tracy Williams. We recommend that Sanchez's application for leave to proceed *in forma pauperis* be granted, that the complaint against defendant Williams be dismissed with prejudice, and that the court transfer all remaining defendants and claims to the United States District Court for the Western District of Pennsylvania.

## II. Background and Procedural History.

Sanchez, a state prisoner proceeding *pro se*, commenced this civil rights action by filing a complaint naming the following individuals as defendants and suing each in their individual and official capacities: Superintendent Louis Folino; Grievance Coordinator Tracy Shawley; Captain Haywood; Lieutenant Shrader; Correction Officer Carter; Correction Officer McCune; Sergeant Chapman; Physician's Assistant Jennifer Trimai; Chief Grievance Coordinator Tracy Williams; and Correction Officers John Doe One and Two.

Generally, Sanchez alleges that the defendants used excessive force by sexually assaulting him, were deliberately indifferent to his serious medical needs by depriving him of medical treatment, retaliated against him for filing a grievance by defaming his character, and denied him adequate redress of his grievance. With respect these allegations, Sanchez is seeking declaratory and injunctive relief as well as compensatory and punitive damages. Sanchez alleges the following facts in his complaint.

Sanchez alleges that, on June 21, 2012, Correction Officers Carter and McCune escorted him out of his cell in the Restricted Housing Unit (RHU). According to Sanchez, the officers directed him to walk backwards with a thick brown leather belt placed around his waist linked to handcuffs preventing him

from raising his arms or hands. Sanchez alleges that he was escorted to a small room in the hallway of F-Block where property is inventoried. Sanchez further alleges that once inside the inventory room, McCune used different objects to plunge in and out of Sanchez's anus, against his will, while Carter held him down. Sanchez further claims that during the alleged incident, Correction Officers John Doe One and Two walked down the F-Block hallway and passed the room in which the alleged rape was occurring. According to Sanchez, Correction Officers John Doe One and Two observed the incident and smiled at Carter who was holding down Sanchez while McCune raped him, and they continued on their way. Sanchez claims that while Correction Officers John Doe One and Two were not participants, they were deliberately indifferent by failing to report the alleged incident they witnessed. Sanchez further claims that officers McCune and Carter used excessive and unreasonable force during the alleged rape, causing him severe injury.

Sanchez alleges that, on Friday, June 22, 2012, he informed Sergeant Chapman of the alleged incident and requested that he call the medical department. According to Sanchez, however, Sergeant Chapman refused and instead told Sanchez to file a sick call request. Sanchez claims that a Department of Corrections policy prevents nurses from picking up or collecting such sick call

requests on Fridays. As a result, Sanchez alleges that he was forced to wait until Monday, June 25, 2012, to be seen by a Physician's Assistant in the medical department. Sanchez further alleges that as a result of waiting four days to be seen by the medical department, he suffered great physical pain in his face and his rectum, and evidence of the alleged rape was destroyed.

Sanchez further alleges that under the Medical Practice Act of 1985, a state-licensed Physician's Assistant is not permitted to conduct rape examinations in the absence of a doctor. Sanchez claims that he was seen solely by Physician's Assistant, Jennifer Trimai, who refused to provide him with pain killers and whose examination consisted of Sanchez pulling down his jumpsuit while Trimai visually inspected his rectum for evidence of rape. Upon her examination of Sanchez's anus, Sanchez alleges that Trimai stated, "It's not too bad now." Sanchez further alleges that Trimai then contradicted this statement by allegedly falsifying his medical records in an attempt to conceal the fact that he was physically and sexually assaulted. Sanchez claims Trimai refused to utilize a rape-kit or to allow a doctor to conduct the rape examination. Additionally, Sanchez alleges Trimai refused to call state troopers or abide by an alleged DOC policy requiring the use of a camera to record injuries. Sanchez further claims that due to the lack of medical care he still suffers pain, aches, and discomfort when he sits.

According to Sanchez's complaint, on June 25, 2012, Captain Haywood from the Security Department interviewed him regarding the June 21, 2012, alleged incident. Sanchez alleges that he informed Captain Haywood of the alleged rape and requested that the Captain contact state police so that Sanchez could press charges. Sanchez claims that Captain Haywood refused to contact the state police unless he disclosed to him who the alleged offending officers were. According to Sanchez, however, a DOC policy requires allegations of rape perpetrated by an employee of the department to be investigated through the Office of Special Investigation and Intelligence and not the Security Office.[1] Accordingly, Sanchez alleges that he was not obligated to disclose who the alleged offending officers were to Captain Haywood, but Captain Haywood was obligated to call the state police.

On June 30, 2012, Sanchez filed a DC-804 Official Inmate Grievance concerning the alleged physical and sexual assault. On July 11, 2012, Grievance Coordinator Tracy Shawley number stamped the grievance as "Appeal No. 419514" and rejected it on the following grounds: (1) Grievance not signed and/or dated; and (2) Grievances based on different events must be presented separately.

---

[1] Sanchez alleges that the Security Office is charged with investigating complaints and allegations of sexual contact solely when the alleged perpetrator is an inmate.

On July 13, 2012, Sanchez claims that Superintendent Folino rejected his appeal for the same reasons outlined by Grievance Coordinator Shawley.

Sanchez further claims that the alleged inaction of the defendants allowed defendant Lieutenant Shrader to violate his First Amendment right to petition the government for redress of a grievance. According to the Sanchez, Lieutenant Shrader retaliated against him by issuing him a Misconduct Report, dated September 11, 2012, based on a charge of "lying to an employee," relating to the alleged incident of June 21, 2012. Sanchez alleges that Hearing Examiner Nunez dismissed the Misconduct Report without prejudice. Sanchez then claims that, on September 17, 2012, Lieutenant Shrader filed a second Misconduct Report based on the same charge, but Hearing Examiner Nunez also dismissed this report without prejudice despite alleged added embellishments and misrepresentations of fact.

According to Sanchez, on September 18, 2012, he corresponded with James C. Barnacle, director of the Office of Special Investigations and Intelligence. Sanchez alleges that Barnacle informed him that the investigation into the allegations stemming from the alleged incident was "not complete at this time," but Sanchez would be notified upon its completion.

Sanchez claims Lieutenant Shrader filed a third, allegedly more embellished Misconduct Report based on the same charge of "lying to an employee." According to Sanchez, on September 24, 2012, Hearing Examiner Nunez found Sanchez guilty of "lying to an employee," related to the June 21, 2012, incident, and accordingly sentenced him to 30 days of Disciplinary Custody to be carried out in the RHU.

Sanchez alleges that, on September 25, 2012, Chief Grievance Coordinator Tracy Williams rejected his appeal on essentially the same grounds cited by Grievance Coordinator Shawley and Superintendent Folino: (1) failure to sign and/or date grievance; and (2) Grievances based on separate events must be presented separately. Despite Hearing Examiner Nunez's finding that Sanchez was guilty of lying to an employee, Sanchez alleges that Williams did not accuse him of lying anywhere in her final decision. According to the report appended to Sanchez's complaint, Williams indicated that although Sanchez's original grievance was dismissed for failing to comply with Inmate Grievance System policy, he had an opportunity to re-submit his grievance in accordance with that policy. Williams does, however, note that despite the dismissal of his grievance, the severity of Sanchez's allegations required referral of the matter to the Security Office and the Office of Special Investigations and Intelligence. She states that

7

Sanchez's allegations were investigated and found unsubstantiated. Sanchez alleges that Williams failed to conduct an individual and impartial investigation into the final appeal of his grievance and instead utilized the same premise as Grievance Coordinator Shawley and Superintendent Folino. Sanchez alleges that Shawley, Folino, and Williams's refusal to abide by the alleged grievance procedures constituted deliberate indifference in violation of his constitutional rights.

Sanchez further asserts that since he received correspondence, dated September 18, 2012, from the director of the Office of Special Investigations and Intelligence, indicating that the investigation was not complete at that time, and moreover that it was not complete until September 25, 2012, when he received Williams's Final Appeal Decision, he should not have been adjudged guilty of misconduct, on September 24, 2012. Sanchez claims Lieutenant Shrader violated his First Amendment right to file grievances and attack the conditions of his confinement by retaliating against him by filing three allegedly falsified Misconduct Reports. Sanchez further alleges that Lieutenant Shrader committed acts of intrinsic fraud and defamed his character by misrepresenting facts in all three Misconduct Reports in an attempt to conceal the truth about the physical and sexual assault inflicted on him.

In an attempt to rectify the alleged misrepresentation of facts contained in Lieutenant Shrader's Misconduct Report, on October 11, 2012, Sanchez filed an appeal of the Misconduct Report to the Program Review Committee. Sanchez alleges, however, that he never received a response, which rendered any possible response defaulted.

### III. Discussion.

#### A. Screening of *Pro Se* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases that seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > **(2)** seeks monetary relief from a defendant who is immune from such relief.

9

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is

and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more
> than conclusions are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations. When
> there are well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions, are
> not entitled to the assumption of truth.' Finally, 'where there are
> well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to
> an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must

12

allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. The Complaint Fails to State a Claim Upon Which Relief May Be Granted Against Tracy Williams.

The complaint fails to state a claim upon which relief may be granted against defendant Chief Grievance Coordinator Tracey Williams, whose only alleged involvement in this matter consisted of considering and rejecting Sanchez's final appeal of the denial of his grievance.

Liability under Section 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)). Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

There are two viable theories of supervisory liability. *Santiago v. Warminster Twp.*, 129 F.3d, 121, 129 n.5 (3d Cir. 2010). Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Id.* Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights, or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*

In this case, Sanchez's after-the-fact grievance complaining about the alleged rape is insufficient to establish personal involvement on the part of Williams. Nor can liability rest here based on the fact that Williams failed to act favorably upon administrative appeals lodged by Sanchez. Indeed, in the context of appeals of prisoner grievances, it is well settled that a supervisor may not be held liable for civil rights violations based solely upon a failure to grant an inmate's appeal of an adverse decision. As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory

14

> roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

*Pressley v. Beard,* 266 F. App'x 216, 218 (3d Cir. 2008). Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances." *Paluch v. Sec'y Pennsylvania Dept. of Corrections,* 442 F.Appx. 690, 695 (3d Cir. 2011). Therefore, defendant Chief Grievance Coordinator Tracy Williams cannot be liable merely because she reviewed and affirmed the denial of Sanchez's grievances.

### C. Sanchez's Complaint relating to Chief Grievance Coordinator Tracy Williams Should be Dismissed With Prejudice.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In this case, amendment would be futile because Sanchez's claim

15

against Williams is barred by the rule discussed in *Pressley v. Beard,* 266 F. App'x 216, 218 (3d Cir. 2008), that a defendant's liability cannot be predicated solely on the operation of *respondeat superior* and that merely denying a grievance or grievance appeal is not sufficient to hold a defendant liable. Thus, we will recommend that the court dismiss the complaint as to defendant Williams without granting Sanchez leave to amend.

> **D.** **The Required Dismissal of Sanchez' Complaint Against Defendant Williams Makes Venue Improper in this District Under 28 U.S.C. § 1391(b).**

Upon review of Sanchez's complaint, with the exception of defendant Williams against whom Sanchez fails to state a claim upon which relief may be granted, we note that his complaint names 10 defendants who do not reside in this district. Moreover, no remaining defendant took action in this district relating to Sanchez's claims. These defendants are all officers or officials of SCI-Greene, which is located in the Western District of Pennsylvania.

With respect to Sanchez's claims against these defendants, venue plainly does not lie in this district. As to these defendants, Sanchez asserts a federal civil rights action by prison officials in the Western District of Pennsylvania. In such cases, where alleged violations of the United States Constitution form the basis for

the court's jurisdiction, 28 U.S.C. § 1391(b) defines the proper venue and provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the same State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In this case, the events or omissions giving rise to the claims occurred in the Western District. Moreover, it appears that all remaining defendants reside in the Western District. Therefore, these claims and defendants all fall within the venue of the United States District Court for the Western District of Pennsylvania, and they are not properly brought before this court.

While an objection to venue may be waived by a defendant, this court is permitted *sua sponte* to raise the issue of an apparent lack of venue, provided the court gives the plaintiff adequate notice of its concerns and an opportunity to be heard on the issue. *Guyton v. Lappin*, 2011 WL 7430063 (M.D.Pa. 2011) (citing *Sterjnholm v. Peterson*, 83 F.3d 347, 349 (10th Cir. 1996)). Through the filing of this report and recommendation, we are providing such notice to Sanchez that these claims and defendants are not properly brought in this district. *Id.* at *4.

17

When it appears that a case has been brought against defendants in the wrong venue, there are two potential remedies available to the court. *Id.* First, the court may dismiss the action for lack of venue pursuant to 28 U.S.C. § 1406, and Rule 12(b)(3) of the Federal Rules of Civil Procedure. *Id.* The court may also however, in the interest of justice, provide another form of relief, one which ensures that venue is proper without prejudicing the rights of the plaintiff. *Id.* Under 28 U.S.C. § 1406(a):

> The district court of a district in which is filed a case laying venue in the wrong…district shall dismiss, or if it be in the interest of justice, transfer such case to any district…in which it could have been brought.

Since the complaint reveals that venue does not lie in this district over the remaining ten defendants named in this action, it is recommended that the Court enter an order transferring these defendants and claims, in the interest of justice, to the United States District Court for the Western District of Pennsylvania.

### IV. <u>Recommendations</u>.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

1) Sanchez's application to proceed *in forma pauperis* (*Doc.* 8) be **GRANTED**; and

2) Sanchez's complaint (*Doc. 1*) against defendant Chief Grievance Coordinator Tracy Williams be **DISMISSED** without leave to amend;

3) The court transfer the case against the remaining defendants to the United States District Court for the Western District of Pennsylvania.[2]

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

---

[2] We leave Sanchez's Motion to Appoint Counsel (*Doc. 2*) and Motion for Preliminary Injunction or for Temporary Restraining Order (*Doc. 4*) to be decided by the Western District of Pennsylvania.

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of June, 2013.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge
